JOURNAL ENTRY AND OPINION
In these consolidated appeals, appellant, Cuyahoga County Department of Children and Family Services, (CCDCFS), appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, denying its motion for permanent custody of Austin Mayle and granting legal custody of Austin to Laura Meadows, with protective supervision to CCDCFS. For the reasons that follow, we vacate the trial court's order and award permanent custody of Austin Mayle to CCDCFS.
 I. STATEMENT OF FACTS AND PROCEDURAL HISTORY
On November 22, 1997, twelve-year-old Christina Mayle gave birth to Austin Mayle. Christina, the product of an incestuous rape of her mother, became pregnant with Austin as a result of an alleged rape by sixteen-year-old Scott Davis, Christina's cousin. Davis, who resides in West Virginia, has never acknowledged paternity and neither he nor any of his relatives has ever been involved in Austin's life.
Originally from West Virginia, where she moved frequently from one relative to another, Christina moved to Cleveland in April 1997 to join her mother, who had relocated to Cleveland. When she gave birth in November 1997, however, Christina was in the custody of CCDCFS because of allegations of neglect and physical abuse by her mother and sexual abuse by several of her mother's acquaintances. Christina's mother, an exotic dancer, denied the allegations, but also stated that she wanted nothing to do with Christina.
Christina and Austin were initially placed together in a foster home. On December 24, 1997, Austin was removed from Christina's care after Christina stated that she was fearful she would harm Austin and that she wanted him put up for adoption. Austin and Christina were placed in separate foster homes.
On January 5, 1998, pursuant to Christina's request to place Austin for adoption, CCDCFS filed a dependency complaint with a prayer for permanent custody and pre-adjudicatory temporary custody. On January 22, 1998, the trial court granted CCDCFS emergency temporary custody. On June 18, 1998, the parties agreed to amend the prayer for permanent custody to temporary custody and Christina admitted to the allegations of the amended complaint. The trial court adjudicated Austin dependent and committed him to the temporary custody of CCDCFS.
Christina changed her mind several times regarding whether Austin should be placed for adoption. In an effort to teach her parenting skills and allow her to bond with her child, on July 27, 1998, CCDCFS placed Christina and Austin together at Marycrest Residential Treatment Center, a residential treatment facility for minor mothers and their babies. Christina had difficulties with the Marycrest program, however, and in the first week of November 1998, attempted suicide. Because of the risk to the child while in his mother's care, on November 10, 1998, Austin was removed from Marycrest and placed in the foster care of Jeff and Claudine Verlinden, where he remained and thrived until his removal, pursuant to court order, in October 1999.
Meanwhile, Christina continued to have ongoing problems at Marycrest. She remained there until January 1999, when she was placed in Laurelwood Hospital after two more suicide attempts in November and December 1998. On February 5, 1999, Christina was placed in Jones Home, another residential facility, where she remained until May 7, 1999, when she was placed in the foster home of Laura Meadows.
Christina received three psychological evaluations while in the custody of CCDCFS. Each of the three evaluations indicated that Christina had significant emotional problems; none recommended that Austin be returned to her care.
On December 15, 1998, CCDCFS filed a motion to modify temporary custody to permanent custody because Austin's birth mother, Christina, had not cooperated with CCDCFS services, Austin's birth father had never established paternity nor participated in the case plan and neither parent was able to provide a safe and stable home for Austin.
On June 23, 1999, the trial court conducted a hearing regarding CCDCFS' motion. In contravention of R.C. 2151.424, Austin's foster parents, the Verlindens, did not receive notice of the hearing and were not permitted to appear at the hearing to present evidence.[1]
After the hearing, the trial court issued an order finding that Austin should not and could not be placed with either biological parent and awarding legal custody of Austin to Laura Meadows, his birth mother's foster parent:
 * * * Considering the factors set forth in Section 2151.414(D), and upon further consideration, the court finds by clear and convincing evidence that the child is not abandoned and that the child cannot or should not be placed with either parent within a reasonable period [of] time as follows: following the placement of the child outside the home, the mother has failed to remedy the conditions causing the child to be placed outside the home. The mother has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child. The mother has failed to attend and successfully complete the referred services set forth in the case plan in an attempt to reunify her with her child. The court further finds that there are no relatives willing or able to care for said child at the present time.
Although the trial court found that Austin could not and should not be placed with Christina, it rejected the recommendation of the child's guardian ad litem to grant permanent custody to CCDCFS:
 Further, the court does not adopt the recommendation of the Guardian ad litem to grant permanent custody to the Cuyahoga County Department of Children and Family Services. It is therefore ordered that the child is committed to the legal custody of an interested individual, Laura Meadows * * * and the Cuyahoga County Department of Children and Family Services to provide protective supervision.
Ms. Meadows did not file a motion requesting legal custody of Austin prior to the hearing.
On July 27, 1998, CCDCFS filed a notice of appeal and a motion for stay of execution of the trial court's order. The case was assigned Case No. 76739. Meanwhile, the Verlindens filed a complaint and a motion for a temporary restraining order in federal court, based on the juvenile court's failure to give them notice and an opportunity to be heard at the June 23, 1999 permanent custody hearing. The federal court granted the motion for temporary restraining order.
On September 2, 1999, this court granted a limited remand of Case No. 76739 to allow the trial court to rule on appellant's Civ.R. 60(B) motion to vacate the June 23, 1999 order denying permanent custody and to hold another hearing at which the Verlindens would be permitted to participate.
On September 10, 1999, the trial court vacated its prior order and scheduled another permanent custody hearing. Subsequently, the Verlindens dismissed the federal lawsuit without prejudice.
On September 24, 1999, the trial court held a brief hearing rescheduling the permanent custody hearing. In addition, it ordered that any evidence presented by the Verlindens at the permanent custody hearing would be severely limited:
 You folks are not a party to the action, but you have a right, a vague right to present evidence, and the Court will limit that evidence concerning their (sic) care and relationship with the child.
 * * * You're only to present evidence concerning your own clients and their relationship to this case. You're not to present evidence that the other placement isn't good, or is good, or anything like that.
On September 30, 1999, the trial court held a second permanent custody hearing. The Verlindens sought to elicit the testimony of their expert, Dr. Sandra McPherson, concerning her opinion regarding such issues as what was in the best interest of the child, bonding, risk assessment and harm to the child if he were removed from his current setting. The trial court ruled, however, that Dr. McPherson could testify only as to what she observes or knows about [the Verlindens'] foster care. Not any expert opinions on what is best under circumstances that may or may not prevail in this case."
The Verlindens also sought to elicit testimony from Laura Meadows, Christina's foster mother, but the trial court limited her testimony only to issues not raised in the prior hearing. In addition, although both Jeff and Claudine Verlinden were allowed to testify regarding the conditions of their home and how Austin was faring, they were prevented from presenting any evidence either rebutting or supplementing the evidence that had been adduced at the June 23, 1999 hearing.
On October 6, 1999, the trial court issued its ruling, reaffirming its earlier ruling awarding legal custody of Austin to Laura Meadows with protective supervision to CCDCFS:
 The evidence presented on October 1, 1999 (sic) as well as the evidence presented on June 23, 1999 established that the Verlindens have had custody of the child since November 9, 1998; that the child was placed with them under what is known as Legal Risk Adoptive Placement where the child is placed on a temporary care basis and is not legally free for adoption at the time; that this is the Verlindens' first foster care child; that the Verlindens have provided suitable care for the child and wish to adopt. The evidence further established that Christina Mayle is not presently able to care for Austin; that she is in the foster care of a qualified foster parent, Laura Meadows; that Laura Meadows has provided foster care for numerous children; that presently she has only Christine (sic) in her care; that she is willing and able to accept custody of Austin and would continue to care for him even if Christine (sic) were removed from her care.
 The court finds that Austin's needs for a legally secure placement can be achieved without a grant of permanent custody to the Cuyahoga County Department of Children and Family Services.
 It is therefore ordered that the child is committed to the legal custody of an interested individual, Laura Meadows * * * and the Cuyahoga County Department of Children and Family Services is to provide protective supervision. * * * *
As in the first permanent custody hearing, Meadows did not file a motion for legal custody prior to the hearing.
On October 8, 1999, the Verlindens relinquished physical custody of Austin to CCDCFS, which, in turn, transferred physical custody to Laura Meadows.
CCDCFS timely filed a notice of appeal of the trial court's October 6, 1999 order. The case was assigned Case No. 77165 and subsequently consolidated with Case No. 76739.
 II. MOTION TO DISMISS
As an initial matter, we address the motion of appellee, Christina Mayle, to dismiss Case No. 76739 as moot. Mayle argues that Case No. 76739, appellant's appeal of the trial court's July 16, 1999 judgment, is moot because this court remanded the case to the trial court for consideration of appellant's Civ.R. 60(B) motion to vacate the judgment and on remand, the trial court vacated its July 16, 1999 order. We agree.
The trial court vacated the order which was the subject of the appeal in Case No. 76739 and, therefore, appellant's appeal is moot. Appellee's motion to dismiss Case No. 76739 as moot is granted.[2]
Mayle also argues that Case No. 77165 should be dismissed for failure to file a brief because appellant listed only the number 76739 in the caption of its amended brief filed in Case No. 77165 and neglected to include the number 77165 in the caption. Mayle also contends that appellant's amended brief does not address the evidence adduced at the second permanent custody hearing on September 30, 1999.
We find this argument to be without merit. Our review of appellant's amended brief indicates that it adequately sets forth the issues and evidence related to its assignments of error concerning Case No. 77165.
 III. APPELLANT'S ASSIGNMENTS OF ERROR
Appellant raises two assignments of error for our review:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT PERMANENT CUSTODY WAS NOT IN THE BEST INTEREST OF THE CHILD AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED IN COMMITTING THE CHILD TO THE LEGAL CUSTODY OF THE MINOR MOTHER'S FOSTER PARENT AND ABUSED ITS DISCRETION IN CONSIDERING THE INTEREST OF THE MINOR MOTHER ABOVE THE BEST INTEREST OF THE CHILD.
In its first assignment of error, CCDCFS asserts that the trial court abused its discretion in denying its motion for permanent custody because CCDCFS proved by clear and convincing evidence that permanent custody was in the best interest of the child. In its second assignment of error, CCDCFS asserts that the trial court abused its discretion in awarding legal custody to Laura Meadows, Christina's foster parent. CCDCFS contends that in doing so, the trial court considered the best interest of Christina over the best interest of the child. We consider appellant's assignments of error together because they are related.
The termination of parental rights in a natural child, when the child is neither abandoned nor orphaned, is governed by R.C.2151.414(B), which provides that a court may grant a motion for permanent custody if the court determines, by clear and convincing evidence,[3] that 1) it is custody of the child to the agency; and 2) the child cannot be placed with either of his parents within a reasonable period of time or the child should not be placed with his parents.
R.C. 2151.414(E) sets forth guidelines for determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents:
 In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with either parent. (Emphasis added.)
The statute then lists various factors for the court to consider, including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *;
 (2) Chronic mental illness, chronic emotional illness * * * that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
 (3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect * * *, or allowed the child to suffer any neglect * * *;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child:
 * * * (16) Any other factor the court considers relevant.
Once the trial court finds from all relevant evidence that one of the factors exists and the child cannot or should not be placed with either of his parents, it then must consider whether permanent custody is in the best interest of the child. In re William S. (1996), 75 Ohio St.3d 95, 99. In determining whether permanent custody is in the best interest of a child, R.C. 2151.414(D) requires the juvenile court judge to consider all relevant factors, including, but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) of [R.C. 2151.414(E)] apply in relation to the parents and child.
It is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. Miller v. Miller (1988), 37 Ohio St.3d 71, 75; In re Awkal (1994), 95 Ohio App.3d 309,315. Indeed, R.C. 2151.414(C) expressly prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents.
While a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and is subject to reversal upon a showing of abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74, citing Dailey v. Dailey (1945), 146 Ohio St. 93. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
Applying these standards to this case, we conclude that the trial court abused its discretion in denying the motion of CCDCFS for permanent custody of Austin Mayle and awarding legal custody of Austin to Laura Meadows, Christina Mayle's foster parent.[4]
First, by awarding legal custody of Austin to Meadows, the trial court circumvented the requirements of R.C. 2151.414(E), which mandate that a child not be placed with its parents when the court finds that one or more of the factors enumerated in the statute exist.
Here, as set forth in its order dated June 23, 1999, the trial court expressly found that several of the factors set forth in R.C.2151.414(E) existed with respect to Christina Mayle:
 * * * [F]ollowing the placement of the child outside the home, the mother has failed to remedy the conditions causing the child to be placed outside the home. The mother demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child. The mother has failed to attend and successfully complete the referred services set forth in the case plan in an attempt to reunify her with her child. The court further finds that there are no relatives willing or able to care for said child at the present time.
Consequently, the trial court entered a finding, as required by R.C. 2151.414(E), that Austin cannot or should not be placed with either parent within a reasonable period of time.
Nevertheless, the trial court circumvented the statutory law requiring that Austin not be placed with Christina by awarding legal custody of Austin to Meadows, thereby allowing Austin to be placed in a home with his biological mother. By placing Austin with Meadows, the trial court succeeded in doing what the statute expressly forbids it from doing — placing a child with his or her parents when one or more of the factors set forth in the statute are present.
The clear import of R.C. 2151.414(E) is that it is mandatory on the court to decide that a child cannot be placed with his parent when any of the * * * conditions exist as to the parent. The intent of the legislature was to eliminate any discretion on the part of the court when one of the conditions exists. In re Higby (1992), 81 Ohio App.3d 466, 469. Finding appellee unsuitable to parent Austin, the trial court was required by statute to place Austin with someone other than appellee.
Appellee contends, however, that the trial court did not place Austin with her; it placed Austin with Meadows by awarding legal custody of Austin to Meadows and, therefore, technically complied with the statute. We disagree. Although the trial court awarded legal custody of Austin to Meadows and not Christina, the reality of the trial court's order is that it placed Austin back into the very situation from which CCDCFS sought to remove him in the first instance: that of a suicidal mother, who had threatened to harm her child, living in the same household as the child, with unlimited access to the child.[5] The trial court erred, therefore, in placing Austin with appellee.
Furthermore, the trial court was not authorized to grant legal custody to Meadows because Meadows did not move for legal custody of Austin prior to either hearing.
R.C. 2151.353(A) governs the dispositional alternatives authorized for a child who has been adjudicated dependant, providing, in part:
 If the child is adjudicated [a] * * * dependant child, the court may make any of the following orders of disposition:
(1) Place the child in protective supervision;
 (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified family foster home;
 (3)Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 (4) Commit the child to the permanent custody of a public children services agency or private child placing agency * * *;
 (5) Place the child in long-term family foster care with a public children services agency or private child placing agency * * *. (Emphasis added.)
The juvenile court's order awarding legal custody to Laura Meadows, even though she had not filed a motion requesting legal custody prior to either hearing, was in violation of the above-stated mandatory statutory requirement. Moreover, such order is in contravention of Juv.R. 19 mandating that requests for relief be made by motion, Juv.R. 22(E) requiring that prehearing motions be filed seven days prior to the hearing, Juv.R. 20 establishing filing and service requirements for written motions and other papers and Civ.R. 5(D) requiring proof of service. See In the Matter of Fleming (July 22, 1993), Cuyahoga App. No. 63911, unreported.
Appellee argues, however, that Meadows was not required to file a motion prior to the September 30, 1999 hearing because the juvenile court was simply modifying its previous dispositional order, something the juvenile court may do sua sponte at any time. Appellee contends that R.C. 2151.353 deals primarily with predispositional proceedings and, therefore, is not applicable to this case. Appellee's argument is without merit.
A juvenile court which issues a dispositional order has continuing jurisdiction over the child, as set forth in R.C.2151.353(E)(1), and may amend the dispositional order in accordance with R.C. 2151.353(E)(2) at any time upon its own motion or upon the motion of any interested party. R.C. 2151.417(B). Upon a motion to modify a dispositional order, the court is required to hold a hearing, as if it were the original dispositional hearing and may make any of the dispositional orders pursuant to R.C.2151.353(A). R.C. 2151.353(E)(2).
Here, the trial court adjudicated Austin dependent on June 18, 1998 and then immediately entered a dispositional order committing him to the temporary custody of CCDCFS. Both the June 23, 1999 and September 30, 1999 hearings were conducted pursuant to the motion of CCDCFS, filed December 15, 1998, to modify the award of temporary custody to permanent custody. Hence, both hearings were dispositional hearings held to determine if the original dispositional order should be amended and, accordingly, proceeded as if they were the original dispositional hearing. As noted earlier, R.C. 2151.353 provides that the court may award legal custody of a child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child. Meadows did not do so and, therefore, the trial court was not authorized to award legal custody to her.
This court has previously held that compliance with the statutory mandates set forth in Chapter 2151 et seq. and the rules of juvenile procedure governing the filing and service of motions will be strictly enforced. In In the Matter of Fleming (July 22, 1993), Cuyahoga App. No. 63911, unreported, we reversed the trial court's judgment granting the guardian ad litem's oral motion to award legal custody of a child to its paternal grandmother because the grandmother had not filed a written motion requesting legal custody prior to the hearing, as required by R.C. 2151.353(A)(3). Quoting from In re Rose (May 21, 1992), Cuyahoga App. No. 62493, unreported, a case in which this court affirmed the decision of the lower court overruling appellant's written and oral motions to intervene in a custody proceeding because the motions were filed without proof of service on all parties, in contravention of Juv.R. 19, 22(E), 20(C) and Civ.R. 5(D), we noted that:
 Procedural rules, such as those governing the filing and service of motions in the case sub judice, are designed to ensure orderly procedure in the courts and due process for all the litigants. Under the circumstances, we find the following admonition persuasive from the Ohio Supreme Court, i.e., not to ignore the requirements of such rules in this context:
 However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of the procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment. Miller v. Lint (1980), 62 Ohio St.2d 209, 215.
Accordingly, we hold that the trial court abused its discretion in awarding legal custody of Austin Mayle to Laura Meadows in the absence of a motion, filed prior to the hearing, requesting legal custody.
The trial court also abused its discretion in denying permanent custody to CCDCFS and awarding legal custody to Meadows because, in doing so, the trial court improperly considered the interest of the biological mother over the best interest of the child.
R.C. 2151.011(B)(26) defines permanent custody as:
 [A] legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations.
R.C. 2151.011(B)(17) defines legal custody as:
 [A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical, all subject to any residual parental rights, privileges, and responsibilities. * * * *
One of the most obvious differences between a disposition of permanent custody and that of legal custody is that the parents' rights to the child are completely terminated when permanent custody is awarded while under legal custody, the biological parents retain residual rights. These residual rights are:
 [T]hose rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support.
A parent's right to raise his or her children is an essential and basic civil right. In re Awkal (1994), 95 Ohio App.3d 309,315. A parent and child have substantial, protected rights in their family relationship. State, ex rel. Herrer v. Miller (1980),61 Ohio St.2d 6, 10. The rights and interests of natural parents, however, are not absolute. In re Awkal, supra at 315. The state may permanently terminate parental rights where the parents are unfit. State, ex rel. Heller, supra at 10.
Here, the trial court ruled that Christina Mayle is not suitable to parent Austin, nor will she be suitable in the foreseeable future. Moreover, the trial court found that the Verlindens were willing and able to adopt Austin and had formed a strong bond with him after caring for him for the majority of his life. Despite these findings, the trial court awarded legal custody of Austin to Meadows, finding that Austin's needs for a legally secure placement can be achieved without a grant of permanent custody to Cuyahoga County Department of Children and Family Services. The apparent motivation for the trial court's order was to retain the birth mother's residual rights to the child, thereby preserving her right to file for return of the child to her custody, while providing the child with on-going contact with his birth mother in the interim.
However, although the trial court's order preserved the birth mother's residual rights, it deprived Austin of any permanency or stability in his life. First, the arrangement itself is extremely tenuous because Christina, a minor with significant emotional problems, could be removed from the foster care of Laura Meadows at any time. Moreover, the award of legal custody placed Austin in a temporary arrangement subject to the continuing jurisdiction of juvenile court. Indeed, as an example of the governmental intrusion that will haunt this child for years to come, the trial court, in its October 6, 1999 order, scheduled a custody review hearing for May 2000. These custody reviews will continue annually until Austin is emancipated or adopted, meaning that his custody arrangement could be changed at any time for the next sixteen years. This certainly does not amount to a legally secure placement. Rather, it guarantees that Austin will live a life of uncertainty with endless court and agency supervision in his upbringing.
In In re Awkal, supra, this court considered, and rejected, the argument by a father convicted of murdering his child's mother, that an order of legal custody of his child to a relative was a legally secure placement and, therefore, the trial court had erred in granting permanent custody of the child to CCDCFS. Quoting the opinion of the trial court with approval, we stated:
 Abdul Awkal resists permanent custody for Zaynab. He argues that an order of legal custody to a relative is a `legally secure permanent placement.' It is not, however, a legally secure permanent placement for a child who is not an orphan. If legal custody is ordered instead of permanent custody, Abdul Awkal's residual parental rights would continue to be a platform from which he may legally challenge Zaynab's placement for as long as he lives. It could be ten years before the courts finally resolve the legal agonies associated with the imposition of the capital penalty in the case of Abdul Awkal.
 To grant the request of Abdul Awkal in this case would ignore the thrust of a long line of well-reasoned court decisions, the weight of child psychology opinion and the legislative mandate of the statute enacted by S.B. 89, effective January 1, 1989, that:
 1) Abused, neglected and dependent children are entitled to stable, secure, nurturing and permanent homes in the near term;
 2) Abused, neglected and dependent children need not be required to languish in legally insecure placements for two, three, four or more years while natural parents are either unwilling or unable to correct serious parenting deficiencies; and
 3) The best interest of the child is the pivotal factor in permanency cases.
S.B. was the Emancipation Proclamation for Ohio's abused, neglected and dependent children. No longer were these innocents to be considered mere legal appendages of their parents.
Similarly, in this case, by awarding legal custody rather than granting permanent custody, the trial court provided Christina Mayle with a platform from which she can repeatedly challenge Austin's placement for years to come. Moreover, it could be years before Christina, herself a minor, is willing or able to give Austin a secure, permanent environment. Indeed, the likelihood is great that she will never be able to do so.
The goal of any disposition of a child is that disposition is in the best interest of the child. In re Baby Girl Baxter (1985),17 Ohio St.3d 229. This must be the primary and overriding concern in any child custody case. In re Higby (1992), 81 Ohio App.3d 466.
As this court stated in In the Matter of Hitchcock (1996),120 Ohio App.3d 88, 102:
 All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation. * * * [T]he Supreme Court of Ohio [has] noted that the state has a strong interest in the permanent placement of children. Legal custody places the children in a temporary arrangement subject, pursuant to R.C. 2151.417, to the continuing jurisdiction of juvenile court. This situation could conceivably last until [the children] are emancipated. This hardly serves the state's interest in finding a permanent placement for children in its care. (Citations omitted).
A permanent, loving family and a safe and stable home is clearly in Austin's best interest. Although the trial court's attempt to keep Christina's options open may have been well-intentioned, it placed the birth mother's interests ahead of Austin's, in violation of the Revised Code and the relevant case law, and failed to consider the best interest of the child involved.
Accordingly, the judgment of the trial court awarding legal custody of Austin Mayle to Laura Meadows and denying the motion of CCDCFS for permanent custody is reversed and judgment is entered in favor of CCDCFS.
Appellant's assignments of error are sustained.
 IV. ASSIGNMENTS OF ERROR BY AMICUS CURIAE JEFFREY AND CLAUDINE VERLINDEN
In light of our disposition of appellant's assignments of error, the assignments of error raised by amicus curiae Jeffrey and Claudine Verlinden are moot and, therefore, we need not consider them (nor whether separate assignments of error may properly be raised in an amicus curiae brief). See App.R. 12(A); App.R.17.
It is, therefore, ordered that appellant recover of appellees costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
 _____________________________ TIMOTHY E. McMONAGLE, P.J.
PATTON, J. and ROCCO, J., CONCUR.
[1] Effective March 13, 1999, R.C. 2151.424(A) provides:
 If a child has been placed in a foster home or is in the custody of a relative of the child, other than a parent of the child, a court, prior to conducting any hearing pursuant to division (E)(2) or (3) of section 2151.412 or section 2151.28, 2151.33, 2151.35, 2151.414, 2151.415, 2151.416 or 2151.417 of the Revised Code with respect to the child, shall notify the foster caregiver or relative of the date, time, and place of the hearing. At the hearing, the foster caregiver or relative may present evidence.
[2] We note, however, that although the trial court vacated its July 16, 1999 ruling, it is apparent that the trial court considered the evidence adduced at the June 23, 1999 hearing in rendering its judgment on October 1, 1999. Thus, although appellant's appeal from that order is moot, the evidence adduced at the hearing which gave rise to the order is not irrelevant to our determination in Case No. 77165.
[3] Clear and convincing evidence is defined as [t]hat measure or degree of proof which is more than a mere `preponderance of evidence' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Lansdowne v. Beacon Journal Publishing Co. (1987), 32 Ohio St.3d 176, 180-181.
[4] Appellee contends that we must presume the regularity of the lower court proceedings because the record on appeal is incomplete. We agree that certain portions of the proceedings below appear to be missing from the record on appeal, but note that the record was transcribed by the court reporter from the tape recording of the proceedings made by the juvenile court. Moreover, we decline to presume regularity because it is apparent even from this record that the trial court abused its discretion in denying the motion of CCDCFS for permanent custody and awarding legal custody of Austin to Laura Meadows.
[5] We recognize that the trial court's October 6, 1999 order does not repeat the findings made in the June 23, 1999 order. As discussed earlier, however, it is apparent that the trial court considered, and relied heavily, upon the evidence adduced at the June 23, 1999 hearing in rendering its October 6, 1999 order. Indeed, the order makes reference to the fact that evidence was taken on both June 23, 1999 and September 30, 1999 (erroneously described in the order as October 1, 1999).